# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

Facility Construction Management Inc.,     :
                                             :

               Plaintiff,                :
                                             :

           v.                     :       CIVIL ACTION NO.
                                             :       1:08-cv-01600-JOF

Ahrens Concrete Floors, Inc.,          :
                                             :

           Defendant.             :
                                             :

## OPINION & ORDER

This matter is before the court on Defendant's motion to exclude expert opinions and testimony [35], Defendant's motion for summary judgment [36], and Plaintiff's motion for summary judgment [48].

## I.  Background

### A.  Facts and Procedural History

This suit arises out of a contract dispute between Plaintiff and Defendant. Plaintiff filed its complaint in the Superior Court of Cobb County in March of 2008, alleging breach of contract, breach of warranty, negligence, contribution, contractual indemnity, common law indemnity, active/passive negligence, and negligent misrepresentation, and requesting damages and declaratory relief. Defendant removed to this court based on diversity

jurisdiction. On March 17, 2009, the parties stipulated to dismiss without prejudice certain counts in the complaint. Docket Entry [32]. The stipulation applied to dismissal of the breach of contract claim, but only in part, and the claims for breach of warranty, negligence, contribution, and active/passive negligence in their entirety. *Id*. According to the parties, the remaining claims are Plaintiff's request for declaratory relief, breach of contract claims as they relate to indemnity and insurance, contractual and common law indemnity, and negligent misrepresentation. *Id*.

On June 8, 2009, Defendant moved for summary judgment, and further moved to exclude Plaintiff's expert, Mr. George Garber's, opinion and testimony. Defendant requests summary judgment on all of Plaintiff's remaining claims. Also on June 8, 2009, Defendant requested a hearing and oral argument as to its motions for summary judgment and to exclude Mr. Garber's opinion and testimony. Plaintiff filed its partial motion for summary judgment on July 24, 2009. Plaintiff only requests summary judgment as to its claims for declaratory judgment and its breach of contract claim regarding Defendant's duty to defend and the duty to obtain and maintain certain insurance.

Plaintiff Facility Construction Management Inc. is engaged in the construction business as a general construction contractor. Docket Entry [55], at ¶ 1. Defendant Ahrens Concrete Floors, Inc. is engaged in the construction business as a subcontractor, performing concrete work. Answer, at ¶ 2. On March 28, 1999, Plaintiff entered into a project with

Bizmart "relating to the design and construction of a Power Max distribution center (the 'Bizmart Project') in Hazelton, Pennsylvania." Docket Entry [55], at ¶ 1. Plaintiff and Defendant entered into a subcontract on June 15, 1999, and under the contract, Defendant was to construct a concrete floor slab for the Bizmart Project. *Id*. at ¶ 2. Defendant's duties included forming, pouring and curing the concrete, installing all doweling, and executing sawcuts in the concrete. *Id*. at ¶ 7.

Defendant substantially completed the project on or before September 15, 1999. Docket Entry [47-2], at ¶¶ 13-14. In November of that same year, Bizmart notified Plaintiff that it was having issues with the concrete floor. Docket Entry [55], at ¶ 3. In early 2001, Bizmart sent a letter to Plaintiff formally requesting that it address the cracking and other problems with the concrete floor slabs. *Id*. at ¶ 4. Finally, in November of 2001, Bizmart sent Plaintiff a "formal demand" requesting that Plaintiff "remedy, repair or replace all defects or imperfections" in the concrete floor. Docket Entry [47-2], at ¶ 18. Bizmart then sued Plaintiff in Pennsylvania state court for breach of contract, breach of warranty, and other claims relating to the concrete slab on August 28, 2002. *Id*. at 22. Docket Entry [55], at ¶ 5.

Under the subcontract between Plaintiff and Defendant, Defendant was also required to procure and maintain certain insurance. Defendant did procure insurance that covered the Bizmart Project and that named Plaintiff as an additional insured. The policy was issued by

3

Regent Insurance Company. Once Bizmart sued Plaintiff, Plaintiff requested indemnification and defense from Regent under the policy. In April of 2008, Regent informed Plaintiff that it was of the opinion that the policy did not cover Plaintiff for the claims in the *Bizmart* action, in part, because the cracking concrete did not constitute an "occurrence" under the policy. Docket Entry [48-8]. Regent also asserted other reasons for denying coverage. Regent filed a declaratory judgment action against Plaintiff in Iowa, and Plaintiff counterclaimed seeking a declaration that the policy did in fact cover Plaintiff for the *Bizmart* litigation. According to Plaintiff, Regent apparently agreed to participate in defending Plaintiff against the claims in the *Bizmart* litigation, but did so under a reservation of rights. The *Regent* litigation and the *Bizmart* litigation are both still pending.

In the present case, the parties' main factual dispute is in regard to what and/or whose actions caused the concrete slab to crack. The parties further disagree over the interpretation of certain language in their subcontract.

### B.    Contentions

Defendant argues that it should be granted summary judgment on all of Plaintiff's claims for several reasons. First, Defendant argues that O.C.G.A. § 9-3-51, Georgia's statute of repose for certain construction claims, applies to and bars all of Plaintiff's claims. Next, Defendant argues that Plaintiff has failed to proffer reliable expert testimony,[1] and therefore,

---

[1] This argument is addressed more fully in Defendant's motion to exclude Plaintiff's expert. Docket Entry [35].

Plaintiff's claims fail as a matter of law. Defendant also argues that certain statutes of limitation under Georgia law bar Plaintiff's declaratory relief and breach of contract claims, as well as Plaintiff's negligent misrepresentation claim. Finally, Defendant argues that Plaintiff's common law indemnity claim is not legally viable because a written contract with an indemnification clause exists between the parties.

Plaintiff requests partial summary judgment as to the following:

(a) that Ahrens breached its contractual obligations under Paragraph 9 of the subcontract by refusing and/or failing to defend and indemnify FCMI against the claims asserted against it in the Bizmart Litigation; (b) [a declaration ] that Ahrens is required, as a matter of law, to defend and indemnify FCMI against any and all claims, damages, losses and expenses that have arisen or may arise against FCMI in the Bizmart Litigation, and (c) that Ahrens breached its contractual obligations under Paragraph 10 of the subcontract by failing to procure proper commercial liability insurance to cover its work on the Bizmart Project, including its defense and indemnification obligations under Paragraph 9 of the subcontract.

Docket Entry [48-2]. Plaintiff contends that declaratory judgment is appropriate with regards to any duty on behalf of Defendant to indemnify or defend Plaintiff. According to Plaintiff, Defendant's actions caused the concrete to crack, buckle, curl, etc., and therefore, Defendant is required to defend and indemnify Plaintiff for any damages or losses that arise out of the concrete problem. Furthermore, because Defendant has not participated in the *Bizmart* litigation up to this point, Plaintiff is entitled to damages for the amount spent litigating. Finally, Plaintiff argues that Defendant clearly breached Paragraph 10 of the subcontract between the parties, which requires Defendant to have procured insurance that

would cover Defendant's duties to defend and indemnify, found in Paragraph 9 of the subcontract.

On Friday, March 19, 2010, the court held a hearing on Defendant's motion for summary judgment and Defendant's motion to exclude Plaintiff's expert opinion and testimony. At the conclusion of the hearing, the court decided to allow Plaintiff to offer a new expert, and the court set up a schedule for briefing regarding the new expert's report. Plaintiff's motion for partial summary judgment relies heavily on the opinion of its original expert and supplemental opinions offered by that expert. Defendant's motion for summary judgment relies on its own motion to exclude Plaintiff's original expert. However, Defendant's motion for summary judgment also asserted arguments that do not concern Plaintiff's proffered expert. In view of efficiency, the court finds it prudent to rule on those issues now as the outcome will determine whether the new expert will even be relevant.

## II.    Discussion

### A.    Defendant's Motion for Summary Judgment

In a diversity action, a federal court must apply the choice of law rules of the forum state. *Whitaker v. Harvell-Kilgore Corp.*, 418 F.2d 1010, 1015 (5th Cir. 1969) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938) and *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)).[2] In the present case, Georgia is the forum state, and

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as precedent the decisions of the Fifth Circuit rendered prior to

AO 72A
(Rev.8/82)

The traditional method of resolving choice-of-law issues is through a tripartite set of rules, which are *lex loci contractus*, *lex loci delicti*, and *lex fori*. Under the rule of *lex loci contractus*, the validity, nature, construction, and interpretation of a contract are governed by the substantive law of the state where the contract was made, except that where the contract is made in one state and is to be performed in another state, the substantive law of the state where the contract is performed will apply. Under the rule of *lex loci delicti*, tort cases are governed by the substantive law of the state where the tort was committed. Under the rule of *lex fori*, procedural or remedial questions are governed by the law of the forum, the state in which the action is brought.

*Fed. Ins. Co. v. Nat'l Distrib. Co., Inc.*, 203 Ga. App. 763, 765 (1992). Here, Pennsylvania law applies to all substantive issues because any torts were committed in Pennsylvania and the subcontract between the parties contains a Pennsylvania choice of law clause. *See Carr v. Kupfer*, 250 Ga. 106, 107 (1982) ("Absent a contrary public policy, this court will normally enforce a contractual choice of law clause."). Georgia law governs procedural issues, like statutes of limitation. *See Simmons v. Sonyika*, 279 Ga. 378, 379 (2005).

---

October 1, 1981.

AO 72A
(Rev.8/82)

### 1.      Common Law Indemnity Claim

The subcontract between the parties includes an express indemnity clause, and Plaintiff has sued Defendant for both contractual and common law indemnity. As the parties have agreed, through the contract between them, that Pennsylvania substantive law applies to Plaintiff's claims, Pennsylvania law applies here. Defendant requests summary judgment on Plaintiff's common law claim, arguing that Pennsylvania law does not allow Plaintiff to bring both a contractual indemnity claim and a common law indemnity claim. Plaintiff recognizes that Pennsylvania courts have found that an express contract for indemnity supplants common law indemnity claims, however, Plaintiff alleges that some Pennsylvania courts have allowed both to proceed.[3] Plaintiff requests that the court permit Plaintiff to assert both claims.

In *Eazor Exp. v. Barkley*, the Pennsylvania supreme court refused to recognize an implied contract of indemnity where there was "a written contract setting forth the rights and duties of the parties." 441 Pa. 429, 431 (1971). As Plaintiff recognizes, other courts have interpreted this decision to mean that "the express terms of [a] contract supersede the common law."*E.g.*, *IU North America, Inc. v. Gage Co.*, No. 00-3361, 2002 WL 1277327,

---

[3] For that proposition, Plaintiff cites one Eastern District of Pennsylvania case, *Fitzpatrick v. Consol. Rail Corp.*, 1991 WL 61114 (E.D. Pa. 1991), and one Pennsylvania superior court case, *Urban Redevelopment Auth. v. Noralco Corp.*, 422 A.2d 563 (Pa. Super. 1980).

AO 72A
(Rev.8/82)

*8 (E.D. Pa. June 4, 2002); *Volkswagen of America, Inc. v. Bob Montgomery, Inc.*, No. 82-3598, 1985 WL 2824, *3 (E.D. Pa. Sept. 25, 1985); *Wyoming Johnson, Inc. v. Stag Indus., Inc.*, 662 P.2d 96, 101 (Wyo. 1983); *Waller v. J. E. Brenneman Co.*, 307 A.2d 55, 553 (Del. Super. 1973). While Plaintiff contends that other courts have allowed these two causes of action to be asserted in the same action, the cases offered by Plaintiff do not support this proposition[4] nor does Plaintiff offer any reason why it should be allowed to proceed with both claims. Plaintiff's claim for common law indemnity is superseded by its claim for contractual indemnity because there is a written contract between the parties with an express indemnification clause in it.

## 2. Timeliness

Defendant moves for summary judgment on all of Plaintiff's other claims based upon Georgia's statute of repose for construction claims. O.C.G.A. § 9-3-51(a). That statute requires certain suits to be brought within eight years of substantial completion of an improvement to real property. *Id.* The concrete slab was substantially completed in September of 1999, and Plaintiff did not file suit until March of 2008, more than eight years

---

[4] In *Noralco Corp.*, the court did not actually address whether both of these claims could be brought in one action. 422 A.2d 563. Instead, the court chose not to discuss the merits of the common law indemnity claim because the parties did not challenge the jury's decision regarding that claim. *Id.* at 479 n. 1. In *Fitzpatrick*, the claim was for noncontractual common law indemnity and, therefore, inapposite to the present case. 1991 WL 61114 (E.D. Pa. 1991).

AO 72A
(Rev.8/82)

later. Defendant claims the entire suit is untimely, but Plaintiff, on the other hand, argues that Pennsylvania's twelve-year statute of repose applies and, therefore, Plaintiff only had to file suit by 2011. At the hearing held by the court regarding Defendant's summary judgment motion, Plaintiff further argued that even if the Georgia statute of repose applies, it does not bar any of its claims because its claims are not "for deficient construction." As stated previously, the court must apply Georgia's choice of law rules. In the present case, Plaintiff and Defendant agree that Pennsylvania law applies to substantive issues because any torts were committed in Pennsylvania and the subcontract between the parties contains a Pennsylvania choice of law clause. The parties further agree that Georgia law governs procedural matters, such as the statutes of limitation. The disputed issue here is whether Georgia's statute of repose is procedural or substantive, and recent Georgia case law answers the question.

In *Bagnell v. Ford Motor Co.*, 297 Ga. App. 835, 836 (2009), the plaintiff sued the defendant for strict liability, negligent design, and failure to warn. After discovery, the defendant moved for summary judgment, in part, on the basis that Georgia's statute of repose for strict liability and negligent design claims precluded the plaintiff from bringing those claims. *Id.* The plaintiff, a Georgia resident, was injured on a Texas highway during a road trip to Texas from Atlanta, when the van she was driving rolled over. *Id.* at 835. The defendant manufactured the van. *Id.* The defendant argued that Georgia's statute of repose

10

barred the plaintiff's claims because the van had been sold for the first time twelve years

prior to the plaintiff filing suit, and the statute of repose required suit to be brought within

ten years from the date of the first sale. *Id*. at 836. The trial court found that the statute of

repose did apply to the plaintiff's claims and barred the plaintiff's negligent design claim.[5]

*Id*. The plaintiff appealed the trial court's application of the statute of repose, arguing that

Texas' statute of repose should have applied because Texas substantive law applied. *Id*.

The Georgia court of appeals addressed the issue of whether a Georgia statute of

repose is substantive or remedial/procedural in nature. *Bagnell*, 297 Ga. App. at 836. Based

on previous case law discussing statutes of repose, the court noted that "Georgia courts . .

. have consistently held that the statute of repose involves remedial - rather than substantive

- rights," and therefore, Georgia's statute of repose is procedural. *Id*. at 837. The court of

appeals affirmed the trial court's decision, stating that it "properly applied" the Georgia

statute of repose to the plaintiff's claims. *Id*. Because Georgia statutes of repose are

procedural, Georgia's statute applies in the present case.

"A statute of repose stands as an unyielding barrier to a plaintiff's right of action .

. . [and] destroys the previously existing rights so that, on the expiration of the statutory

period, the cause of action no longer exists." *Wright v. Robinson*, 262 Ga. 844, 845 (1993)

---

[5] The court did not bar the plaintiff's strict liability claims based on an exception in
the statute. *Id*.

11

(emphasis added) (internal citations and quotations omitted). Furthermore, "[a] statute of repose . . . limits the time within which an action may be brought and is not related to the accrual of any cause of action. The injury need not have occurred, much less been discovered." *Id*. The statute of repose relevant to this case states:

(a) No action **to recover damages**:

> (1) For any deficiency in the survey or plat, planning, design, specifications, supervision or observation of construction, or construction of an improvement to real property;

> (2) For injury to property, real or personal, arising out of any such deficiency;

.      . . .

**shall be brought** against any person performing or furnishing the survey or plat, design, planning, supervision or observation of construction, or construction of such an improvement **more than eight years after substantial completion of such an improvement**.

O.C.G.A. § 9-3-51(a) (emphasis added). The parties do not dispute that the date of substantial completion was September 15, 1999. Because the present case was not brought until 2008, any right of action falling within the ambit of § 9-3-51(a) is barred as it was extinguished in September of 2007. The court will address the application of O.C.G.A. § 9-3-51(a) to Plaintiff's individual claims.

From the record, it appears that Plaintiff is alleging three separate breaches of contract. Plaintiff alleges that Defendant breached Paragraph 9 [6] of the subcontract in two ways: failure to defend and failure to indemnify. Plaintiff also contends that Defendant failed to procure certain insurance as required by Paragraph 10 [7] of the subcontract. Also

---

[6] Paragraph 9 states:

Subcontractor shall, to the fullest extent permitted by law and to the extent that any such claims, losses, liabilities or expenses are caused in whole or part by any act or omission of Subcontractor, anyone directly or indirectly employed by Subcontractor or anyone for whose acts Subcontractor may be liable, regardless of whether any such claims, losses, liabilities or expenses are caused in part by a party indemnified hereunder, indemnify, hold harmless, and defend Contractor, Owner, Indemnitees and Engineer and the agents and employees of Contractor, Owner, Indemnitees and Engineer from and against any and all claims, losses, liabilities and expenses, including attorneys' fees, arising out of or in any manner caused by, connected with or resulting from the performance of this Subcontract and/or the Work.

Docket Entry [36-4], at ¶ 9.

[7] Paragraph 10 states:

Until the Work is fully completed and accepted by Owner, Subcontractor shall pay for and maintain with companies satisfactory to Contractor worker's compensation, employer's liability and comprehensive general liability insurance, including coverage for premises operations, independent contractors, completed operations, contractual liability, personal injury liability, property damage (broad form), XCU hazards liability, "occurrence" in lieu of "accident" bodily injury and automobile liability for all owned, used and hired automobiles . . . . Any insurance policy required to be maintained hereunder by Subcontractor shall name Contractor and Owner as additional insureds as to all coverages except worker's compensation and employer's liability insurance . . . . Subcontractor shall, before commencing the Work, deliver to Contractor certificates of insurance indicating that Subcontractor is in compliance with the insurance requirements set forth hereinabove and that the contractual liability coverage maintained by Subcontractor covers the indemnification provision set forth in Paragraph 9 hereinabove.

13

related to the contract is Plaintiff's claim for contractual indemnity. The court first addresses Plaintiff's breach of contract claims for failure to defend and indemnify and Plaintiff's contractual indemnity claim. These are claims to recover damages and were brought outside of the eight-year period allowed by § 9-3-51(a). The question remains, however, as to whether the claims are included within the text "for any deficiency in the survey or plat, planning, design, specifications, supervision or observation of construction, or construction of an improvement to real property or . . . for injury to property, real or personal, arising out of any such deficiency." O.C.G.A. § 9-3-51(a). If not, then even though brought outside the eight-year time limit, they are not precluded. Claims for indemnity and contribution were contemplated by the Georgia Legislature when enacting § 9-3-51. *Standard Fire Insur. Co. v. Kent & Assocs., Inc.*, 232 Ga. App. 419, 420 (1998). While the court can find no case that applies § 9-3-51(a) to preclude a claim for breach of contract for failure to indemnify and/or defend or for contractual indemnification, Georgia courts have applied the statute to a case involving a claim for common law indemnity and have applied similar statutes of repose to claims for indemnification and contribution.

In *Krasaeath v. Parker*, Parker's son was treated at a hospital and, while there, evaluated by Dr. Martin in the emergency room and his chest x-rays were interpreted as normal by Dr. Krasaeath. 212 Ga. App. 525, 525 (1994). Parker's son passed away two days

─────────────────────

Docket Entry [36-4], at ¶ 10.

later, after being discharged, from a pulmonary embolism. *Id*. Parker filed a medical malpractice action, naming Dr. Martin among the defendants but not Dr. Krasaeath. *Id*. Parker settled with Dr. Martin and obtained an assignment of his right of contribution. *Id*. Almost six years after her son died, Parker sued Dr. Krasaeath and his insurers seeking contribution under the right assigned to her by Dr. Martin. *Id*. Parker's complaint alleged that Dr. Krasaeath was negligent, and her claim for contribution was "predicated upon the proof that Dr. Krasaeath was a joint tortfeasor along with Dr. Martin." *Id*. at 525-26.

O.C.G.A. § 9-3-71 reads, in relevant part, that "[n]otwithstanding [the two-year statute of limitation], in no event may an action for medical malpractice be brought more than five years after the date on which the negligent or wrongful act or omission occurred." The *Krasaeath* court concluded that, "Although the claim is couched as one for contribution, and but for the statute of repose would have been timely, substance prevails over form. Recovery is predicated on proof of Dr. Krasaeath's professional negligence." *Krasaeath*, 212 Ga. App. at 526. Parker was essentially bringing a suit for medical malpractice. The statute of repose stated that "in no event" may a medical malpractice claim be brought more than five years after the negligent act occurred, and recovery could have been sought against Dr. Krasaeath by adding him as a defendant in the original action, impleading him in the original action, or suing him for contribution within the statute of repose. *Id*. at 526. The court held that Parker "[c]annot be permitted to do indirectly what the law does not permit

15

her to do directly. That is, she cannot in effect hold Dr. Krasaeath liable for professional negligence through dilatory third-party action for contribution. Logic and fairness dictate the conclusion that the present claim came too late." *Id.*

In *Gwinnett Place Associates, L.P. v. Pharr Engineering, Inc.*, 215 Ga. App. 53, 53 (1994), § 9-3-51 was applied to preclude an indemnification claim based up deficient construction. Gwinnett Place, a shopping mall, was sued by a patron who fell on the mall premises. *Id.* Gwinnett Place filed a third-party complaint against Pharr, the designer of the parking lots and curbs for the mall.[8] *Id.* at 53-54. Gwinnett alleged that if it was held liable to the patron who fell, it was entitled to indemnification and contribution from Pharr. *Id.* at 54. Pharr had finished constructing any improvements in 1984, and Gwinnett Place did not sue Pharr until 1993. *Id.* Gwinnett Place's indemnification claim was based on common law,[9] and not contract language. *Id.* Pharr was granted summary judgment by the trial court which held that the suit was barred by § 9-3-51. *Id.* Gwinnett Place appealed. *Id.*

---

[8] Gwinnett Place also named others involved in the construction of the premises as defendants.

[9] Georgia law defines a claim for common law indemnity as follows: "A person who is compelled to pay damages because of liability imputed to him as the result of a tort committed by another may maintain an action for indemnity against the person whose wrong has thus been imputed to him." *Crawford v. Johnson*, 227 Ga. App. 548, 549 (1997). This requires the plaintiff maintaining the action to show that the defendant, from whom he seeks indemnity, caused the wrong which is imputed to the plaintiff. *See generally Auto-Owners Ins. Co. v. Anderson*, 252 Ga. App. 361, 363 (2001).

16

The court of appeals relied upon the reasoning in *Kraseath* to find that § 9-3-51 did in fact apply to Gwinnett Place's claim for indemnification.[10] *Id.* at 55. The court was persuaded by the fact that "the legislature's intent, in enacting statutes of ultimate repose, [was] to establish a reasonable outside time limit beyond which architects, engineers, and contractors are insulated from suit based upon their work in constructing improvements to real estate." *Id.* The court noted that without that protection, said persons would be "exposed to liability" even after they were no longer in control of the improvements or their upkeep. *Id.* Gwinnett Place's claim may have been "couched" in terms of indemnification, but allowing that claim would thwart the intentions of the legislature because the suit was essentially for deficient construction.[11] *Id.* Compare *Nat'l Serv. Indus., Inc. v. Georgia Power Co.*, 294 Ga. App. 810, 814 (2008) (declining to apply § 9-3-51 to a contractual indemnity claim because the indemnification provision in a contract did not require a

---

[10] Gwinnett Place attempted to rely on a case out of Indiana, which held that a similar statute of repose did not apply to an action for indemnification. *Id.* The court held that the case was distinguishable because it "involved a written contract for indemnification" and not a common claim for indemnity. *Id.* However, the court did not explain the relevance of that distinction, or why a contractual indemnity claim might be different. Furthermore, in *Nat'l Serv. Indus., Inc.*, the court held that § 9-3-51 did not apply because the claimant was not alleging that there was any deficient construction, nor did the contract require deficient construction. 294 Ga. App. at 813. This indicates that § 9-3-51 could apply to contractual indemnification claims where deficient construction is alleged and the contract requires a showing of such deficiency.

[11] Like *Gwinnett Place*, Plaintiff's common law indemnity claim in the present case is clearly barred by the statute of repose even if it could bring both a common law and contractual indemnity claim in the same action.

showing of deficient construction).[12] All in all, the case law shows that Plaintiff should not be allowed to skirt the statute of repose in § 9-3-51 by bringing indemnification or defense claims that are essentially claims for deficient construction.[13]

In the present case, the parties agree that there must have been some deficient construction before Paragraph 9 is invoked. Therefore, Plaintiff's claims for breach of Paragraph 9 and contractual indemnification are actions for damages, and while they may be couched in terms of indemnification and defense, Plaintiff is required to prove Defendant deficiently constructed, planned, or designed the concrete slab before it can prevail. Essentially, Plaintiff is attempting to recover for losses caused by deficient construction or injury to property caused by deficient construction. Plaintiff could have sought recovery against Defendant by impleading it in the *Bizmart* action or suing Defendant for the faulty construction within the statute of repose. Plaintiff cannot be permitted to do indirectly what

---

[12] The court relied on *Virginia Ins. Reciprocal v. Pilzer*, 278 Ga. 190 (2004), which held that the medical malpractice statute of repose discussed in *Krasaeath* did not apply in a contribution action where liability did not depend on proof of negligence.

[13] Georgia courts have construed § 9-3-51 broadly in other contexts as well. *See, e.g., Taylor v. S & W Dev.*, 279 Ga. App. 744, 746 (2006) (holding that the plaintiff's claim for breach of duty to warn or repair were barred by the statute because "if the [improvement] was not defective, then there was nothing to warn of or to repair, and if [defendant] did not cause the defect, then it had no duty to discover and disclose the defect.").

AO 72A
(Rev.8/82)

the law does not permit it to do directly, and "[l]ogic and fairness dictate the conclusion that the present claim came too late."[14] *Krasaeath*, 212 Ga. App. at 526.

Defendant also argues that Plaintiff's claim for breach of contract for failure to procure proper insurance is barred by § 9-3-51. This is an action for damages and, therefore, the court must again consider whether Plaintiff's claim is an action "[f]or any deficiency in the survey or plat, planning, design, specifications, supervision or observation of construction, or construction of an improvement to real property [or] [f]or injury to property . . . arising out of any such deficiency . . . ." O.C.G.A. § 9-3-51. In support of its claim for breach of Paragraph 10, Plaintiff argues that the subcontract required Defendant to procure insurance that provides coverage for the defense and indemnity obligations in Paragraph 9 of the subcontract. The contract has been breached by Defendant because even though Defendant provided an insurance policy, the insurance company is refusing to defend or indemnify because the concrete slab damage is not an "occurrence" under the insurance

---

[14] Even if the statute of repose was not a bar, the court notes that Plaintiff's claims for indemnification and breach of contract for failure to indemnify are premature. "Claims for indemnification arise only when the party seeking indemnity has made a payment on the underlying claim . . . . Under Pennsylvania law, actual payment, and not just a verdict or judgment, is required. Because the right to indemnification does not arise until payment is made, the party seeking indemnity is not prejudiced by being denied the pursuit of any claim prior to that time." *McClure v. Deerland Corp.*, 585 A.2d 19, 22-23 (Pa. Super. 1991) (internal citations omitted). Plaintiff admits that there is no judgment against it in the *Bizmart* litigation. As there is no judgment against Plaintiff, it has no present claim for indemnification nor can Defendant have breached a duty that has yet to arise.

AO 72A
(Rev.8/82)

policy. The concrete slab is what gave rise to the *Bizmart* litigation, and Defendant's alleged obligations under Paragraph 9. Therefore, Defendant did not procure insurance that sufficiently covers its defense and indemnification obligations under Paragraph 9. Again, Plaintiff's claim is essentially one for deficient construction and/or resulting property injury and, therefore, barred by the statute of repose.

Alternatively, Defendant argues that Plaintiff's claim for breach of contract for failure to procure proper insurance is barred by the applicable statute of limitation. Defendant argues that claims based on a construction contract must be brought within six years of substantial completion. Because construction was substantially completed in September of 1999, Plaintiff only had until September of 2005 to file suit. Plaintiff did not file suit until 2008, and, therefore, Defendant concludes that Plaintiff's contract-related claims are barred by the relevant statute of limitations. Plaintiff argues that its breach of contract claim for failure to procure proper insurance did not accrue upon substantial completion. According to Plaintiff, it had no way of knowing that Defendant did not have proper insurance until April of 2008 when Defendant's insurance company informed Plaintiff that Plaintiff was not covered under the policy. Therefore, the cause of action did not accrue until then. Furthermore, Plaintiff argues that Defendant may have fraudulently concealed the fact that

AO 72A
(Rev.8/82)

it did not have the proper insurance required by the contract, and therefore, the statute of limitations was tolled until Plaintiff discovered the fraud in April of 2008.[15]

"Statutes of limitation '[limit] the time in which a party may bring an action for a right which has already accrued.'" *Lloyd v. Prudential Sec., Inc.*, 211 Ga. App. 247, 248 (1993). In diversity cases, the federal court must apply the conflict rules of the forum state, which in the present case is Georgia. *Whitaker*, 418 F.2d at 1015. This is so because those questions are procedural rather than substantive. *Hudnall v. Kelly*, 38 F. Supp. 1352, 1354 (N.D. Ga. 1975) (Hill, J.). Even where the parties have contracted that the law of another forum applies, the forum state's procedural laws are still applied. *Lloyd*, 211 Ga. App. at 248. Section 9-3-24 of the Georgia Code states that "All actions upon simple contracts in writing shall be brought within six years after the same become due and payable." Georgia law clearly holds that a breach of contract action does not begin to accrue until the actual breach, or in other words, the cause of action accrues at the point in time where the plaintiff could have first brought suit.[16] *Wallace*, 279 Ga. at 747.

---

[15] Plaintiff cites no evidence supporting its allegations of fraud against Defendant, and therefore, the court will not discuss it.

[16] Defendant points to Georgia case law stating the general proposition that when a breach of contract action is based upon faulty construction, the cause of action always begins to accrue at the time of substantial completion. *Fort Oglethorpe Assocs. II, Ltd. v. Hails Const. Co. of Georgia*, 196 Ga. App. 663, 664 (1990). However, Georgia courts have reiterated that even in cases involving construction deficiencies, the statute of limitations runs from the time of the breach, which is not always substantial completion. *See Space Leasing Assocs. v. Atlantic Bldg. Sys., Inc.*, 144 Ga. App. 320 (1977) (holding that the

In the present case, Paragraph 10 of the subcontract required Defendant to "pay for and maintain . . . comprehensive general liability insurance" that had to cover certain things, including the indemnification requirements in Paragraph 9. Defendant apparently did procure an insurance liability policy, which named Plaintiff as an additional insured and provided copies of that to Plaintiff. Defendant provided Plaintiff with a copy of the certificate of liability insurance on August 6, 1999, which lists Plaintiff as an additional named insured. Docket Entry [48-8]. However, Defendant's insurance company sent Plaintiff a letter on April 11, 2008 stating that Plaintiff was not covered under the policy for the *Bizmart* litigation. Therefore, Plaintiff alleges that its right to sue did not accrue until 2008, when the insurance company denied coverage. There is no discovery rule that tolls the statute of limitations in a breach of contract claim — instead, the right accrues when the contract is breached. *Hamburger v. PFM Capital Mgmt., Inc.*, 286 Ga. App. 382, 385 (2007). Even if Regent's denial of coverage does somehow mean the insurance did not comply with the contract, the policy was procured in 1999, and at that time it either did or did not comply with the contract. Therefore, the contract, if breached at all, was breached then, which is outside the six-year statute of limitations found in § 9-3-24 as this suit was

statute of limitations barred claims based on design and installation defects because they accrued at the time of substantial completion but allowing a claim for breach of warranty based on the same contract). *See also Wallace v. Bock*, 279 Ga. 744, 747-48 (2005) (holding that the rule that the period of limitations beings to run on the date of substantial completion is "only the 'general rule' and, as such, is not invariably applicable in all circumstances.").

22

brought in March of 2008. Plaintiff's claim for breach of contract for failure to procure insurance is barred by the statute of limitations and the statute of repose.

The court next determines whether Plaintiff's negligent misrepresentation claim is barred by the statute of repose or statute of limitations. As to the statute of repose, while Plaintiff does request damages in conjunction with this claim, the claims must also be "for" deficient construction or "for" injury to property. Under Pennsylvania law, negligent misrepresentation claims require Plaintiff to prove "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and; (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Bortz v. Noon*, 556 Pa. 489, 500 (1999). In their briefs, neither Plaintiff nor Defendant discuss the substance of Plaintiff's negligent misrepresentation claim.. Nor does Plaintiff's complaint provide enough detail for the court to determine what misrepresentation is alleged. However, during the hearing conducted by this court on Defendant's motion for summary judgment, Plaintiff described the misrepresentation as being made when Defendant gave Plaintiff the certificate of liability insurance, which stated that Plaintiff was an additional insured under the policy taken out by Defendant to cover the Bizmart Project. Plaintiff contends that when Defendant gave it the certificate, Defendant was representing that the insurance policy complied with the contract and, in particular, covered Defendant's defense and

indemnification duties found in Paragraph 9. However, the representation was false because, as explained above, the insurance company has now informed Plaintiff that it is not covered by the policy for the cracking concrete. The negligent misrepresentation claim again is based on deficient construction by Defendant. The misrepresentation is allegedly false because the insurance policy does not actually cover the duty to defend and indemnify, which only arises, in this particular case, if Defendant deficiently constructed the concrete. This claim is also barred by Georgia's statute of repose.

Alternatively, Defendant argues that Plaintiff's claim for negligent misrepresentation is untimely based upon § 9-3-31 of the Georgia Code. Section 9-3-31 does contain the appropriate statute of limitations for Plaintiff's tort claim, *Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.*, 267 Ga. 424, 426 (1997), and it states, "Actions for injuries to personalty shall be brought within four years after the right of action accrues." However, negligent misrepresentation claims do not accrue until economic injury results from reliance on the misrepresentation. *See id.* at 427. The court cannot determine when Plaintiff first allegedly suffered economic injury as neither party, in briefing or in oral argument, has informed the court of when that occurred. However, the court will note that based upon § 9-3-36, Plaintiff cannot recover for any misrepresentation and resulting injury that occurred prior to March of 2004. Based upon the above discussion, Defendant's motion

for summary judgment as to Plaintiff's negligent misrepresentation claim cannot be granted on the basis of the statute of limitations.

The only remaining claim yet to be discussed by the court with regard to timeliness is Plaintiff's request for declaratory judgment. First, the court notes that the plain language of the statute indicates that § 9-3-51 does not apply to declaratory judgment requests. Section 9-3-51 applies to actions "to recover damages." Declaratory judgment actions by nature are not actions for damages. Declaratory judgment is "[a] binding adjudication that establishes the rights and other legal relations of the parties without providing for or ordering enforcement." *Black's Law Dictionary. See also* O.C.G.A. § 9-4-2. There is no Georgia case applying § 9-3-51, or any similar statute of repose, to a declaratory judgment claim. However, Plaintiff's request for declaratory judgment pertains solely to whether Defendant must indemnify and defend Plaintiff with regard to the *Bizmart* action. The court has already determined that the statute of repose extinguished any claims for indemnification and defense based upon deficient construction by Defendant. Because Plaintiff's claims for defense and indemnity are barred, or rather, have been extinguished by the statute of repose, it follows that the declaration of its right to indemnity and defense under the subcontract would simply be that Plaintiff has no rights.

25

### III.    Conclusion

In conclusion, Defendant's motion for summary judgment is GRANTED as to all of Plaintiff's claims [36]. Plaintiff's motion for partial summary judgment is DENIED [48]. Defendant's motion to exclude is DENIED as MOOT [35]. This motion disposes of the instant case in full, and the clerk of court is DIRECTED to DISMISS Plaintiff's complaint with prejudice.

**IT IS SO ORDERED** this 24th  day of March 2010.


_____/s   J. Owen Forrester_____
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)